**AFFIRM; and Opinion Filed April 18, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01379-CV

### LESLIE BRODERICK, Appellant
### V.
### UNIVERSAL HEALTH SERVICES, INC., UHS OF DELAWARE, INC., HICKORY TRAIL HOSIPTAL, L.P., AND RAJINDER SHIWACH, Appellees

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-07673**

## MEMORANDUM OPINION
Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Fillmore

Leslie Broderick was a patient at Hickory Trail Hospital, L.P. (Hickory Trail) from April

17, 2014, through May 16, 2014. On June 23, 2016, Broderick sued Universal Health Services,

Inc. (UHS), UHS of Delaware, Inc. (UHSD), Hickory Trail, and Dr. Rajinder Shiwach, alleging

she was raped in May 2014 by Shiwach and other employees of UHS, UHSD, or Hickory Trail.

The trial court granted summary judgment in favor of appellees, finding Broderick's claims were

barred by the two-year statute of limitations applicable to health care liability claims and her pre-

suit notice and authorization form were ineffective to toll the running of limitations. *See* TEX. CIV.

PRAC. & REM. CODE ANN. §§ 74.251(a), 051–.052 (West 2017 & Supp. 2017).[1]

---

[1] Section 74.052 was amended by the legislature effective June 19, 2017. *See* Act of May 24, 2017, 85th Leg., R.S., 2017 Tex. Gen. Laws 1336, 1336–39. Because the amendments do not affect our analysis in this case, we will refer to the codified statute for convenience.

In two issues, Broderick argues the trial court erred by granting summary judgment because (1) there is a genuine issue of material fact regarding whether the limitations period was tolled, and (2) if limitations was not tolled, the application of the statute of limitations to her claims conflicts with her rights under the Americans with Disabilities Act, *see* 42 U.S.C.A. §§ 12101–12213 (West 2013) (the ADA), and to equal protection under the Fourteenth Amendment of the United States Constitution, *see* U.S. CONST. amend XIV. We affirm the trial court's judgment.

**Background**

Broderick was involuntarily committed to Hickory Trail on April 17, 2014, and was administered psychotropic medications pursuant to a May 7, 2014 court order. Broderick was discharged from Hickory Trail on May 16, 2014.

Health care liability claims are governed by the procedures in chapter 74 of the civil practice and remedies code. *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 69 (Tex. 2011). One of these is the requirement that, at least sixty days before filing suit, a claimant give a defendant pre-suit notice of the claim. *Id.* § 74.051(a). The notice must be accompanied by an "authorization form for release of protected health information as required" under section 74.052 of the civil practice and remedies code. *Id.* If the claimant gives notice "as provided in this chapter," the statute of limitations is tolled "to and including a period of 75 days following the giving of the notice[.]" *Id.* § 74.051(c); *see also Carreras*, 339 S.W.3d at 74 ("[F]or the statute of limitations to be tolled in a health care liability claim pursuant to Chapter 74, a plaintiff must provide both the statutorily required notice and the statutorily required authorization form.").

On April 15, 2016, David L. Sheller, Broderick's attorney, sent a letter to UHS, UHSD, and Hickory Trail providing written notification "[p]ursuant to Texas Civil Practice and Remedies Code §74.051" that Broderick had "a health care liability claim related to the health care rendered to her beginning on or about April 17, 2014 with her false imprisonment." Sheller represented that

Broderick was "raped by staff members in or about May 2014 . . . while being under your care at Hickory Trail." Sheller indicated an authorization form for the "release of protected health information pursuant to CPRC §74.052" was attached to the notice letter. However, the attached Authorization to Disclose Protected Health Information was a form developed for compliance with section 181.154(d) of the health and safety code, part of the Texas Medical Records Privacy Act[2] promulgated in accordance with the federal Health Insurance Portability and Accountability Act (HIPAA).[3] The form, which was signed by Broderick on April 15, 2016, authorized Hickory Trail to release information to Sheller for "legal purposes."

On June 23, 2016, Broderick filed her original petition asserting claims against appellees.[4] Broderick filed a first amended petition on July 13, 2016, alleging she was "gang raped" by Shiwach and other individuals in May 2014 while she was a patient at Hickory Trail. She asserted claims against UHS, UHSD, and Hickory Trail based on negligent hiring, understaffing, failing to provide adequate security, failing to perform background checks, and negligent retention.

Appellees moved for summary judgment on the ground limitations began to run on Broderick's claims in May 2014, she did not file suit until June 23, 2016, and her claims were barred by the two-year limitations period in section 74.251 of the civil practice and remedies code. Appellees also asserted the authorization form provided by Broderick on April 15, 2016, failed to comply with section 74.052 of the civil practice and remedies code and, therefore, did not toll the

---

[2] *See* TEX. HEALTH & SAFETY CODE ANN. §§ 181.001–.207 (West 2017).

[3] *See* 42 U.S.C.A. §§ 1320d–1320d-9 (West 2012).

[4] Broderick also sued "John Doe," "Chica aka John Doe," and "Defendant aka John Doe a woman," who were all described as employees or managers of UHS, UHSD, or Hickory Trail. The record does not reflect that Broderick requested citation be issued or served on any of these individuals, and none of them appeared in this case. The trial court's summary judgment order does not mention these individuals, but states it is a "final judgment disposing of all parties and all claims," and that it was the trial court's intention "to completely dispose of the entire case." Under these circumstances, we conclude the trial court's summary judgment order was a final judgment for purposes of appeal. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 674–75 (Tex. 2004) (summary judgment that failed to address claims against all named defendants was final when record affirmatively showed plaintiff never intended to serve remaining defendant, did not request citation be issued for that defendant, and appealed judgment without indicating it was not final because she intended to serve remaining defendant); *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962) (summary judgment expressly disposing of all named parties other than party that record reflected was not served, did not answer, and plaintiff did not expect to obtain service upon stood "as if there had been a discontinuance" as to that party, and judgment was regarded as final for purposes of appeal).

running of limitations. As summary judgment evidence, appellees relied on the April 15, 2016 notice letter; the authorization form signed by Broderick; and a blank form titled Authorization Form for Release of Protected Health Information that illustrated the information required by section 74.052.

Broderick responded to the motions for summary judgment, arguing (1) there was a genuine issue of material fact regarding whether either the HIPAA-compliant form she provided to appellees on April 15, 2016, or a disability tolled the running of limitations; and (2) if limitations was not tolled, the application of section 74.251 to her claims conflicted with her rights under the ADA and denied her and other individuals with disabilities their right under the Fourteenth Amendment to equal protection of the laws. As summary judgment evidence, Broderick relied on excerpts from an August 18, 2016 hearing on a motion for continuance during which counsel for UHS, UHSD, and Hickory Trail declined to stipulate that Broderick was disabled pursuant to the ADA; her affidavit; the affidavit of Dr. William H. Reading, a physician who is board certified in psychiatry and neurology and specializes in neuropsychiatry; and the affidavit of Sheller.

In her affidavit, Broderick stated that, while she was a patient at Hickory Trail, she was forced to take prescribed medications that made her "very weak" and caused her eyes to dilate. In Broderick's opinion, the "effects of the drugs took weeks or months to wear off." Broderick stated that, in May 2014, she was raped at Hickory Trail "by a man named Chica, Dr. Shiwach, and a large African American black man who was the director of the facility." She was discharged from the facility several days after the rapes, returned to work, and told some of her coworkers about the rapes. According to Broderick, "even today" she had "so much anxiety" that she could not "deal with the rapes very well." Although Sheller requested that she sign the "proper authorizations" at least thirty times, she "simply could not handle thinking about the situation or

–4–

the doctors that [she] went to before or after the situation." She did not sign the release for "months" and, when she signed the release, could not remember all her doctors' names.

Reading stated that, although Broderick was not under his care and he had not evaluated her, he had reviewed her medical records from Hickory Trail. Those records indicated Broderick was administered Depakote ER *Sodium Divalproate*, Risperdal *Risperidone*, and Cogentin *Benatropine* while a patient at Hickory Trail. Although Reading listed a number of possible side effects relating to these drugs, the only specific side effect he noted Broderick had suffered from the medications was "somnolence during the later part of hospitalization." In Reading's opinion, the "documented side effects of the court-ordered medication with particular attention to tiredness and somnolence would have interfered with timely attention to seeking legal advice and filing any legal proceedings." In Reading's opinion, the side effects would have lasted for a minimum of two weeks after Broderick ceased taking the medications. Reading also noted that "ICD-10 Diagnoses" given to patients with side effects from the medications administered to Broderick qualified as disabilities under the ADA.

Sheller confirmed that he asked Broderick to sign the "proper release," but "she was unable to deal with the situation in a timely manner." Sheller stated that Broderick eventually signed the "release specified in the medical malpractice statute," and he provided it to appellees. Even though appellees had not requested he do so, he also provided them with medical records from two different physicians, and appellees had not sought any other medical records. Sheller spoke to Richard Kim, the Director of Claims for UHS. Kim did not request Broderick's medical records, but did ask for "more evidence of the rape." In Sheller's opinion, Kim had "sufficient knowledge and counsel to ask for additional medical records if they were needed to settle the case."

The trial court granted appellees' motions for summary judgment and found that Broderick failed to file the lawsuit within the applicable limitations period and failed to toll the running of

limitations by following the procedures in sections 74.051 and 74.052 of the civil practice and remedies code.

## Standard of Review

We review a trial court's grant of summary judgment de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (per curiam). With respect to a traditional motion for summary judgment, we review whether the movant met its burden of demonstrating that no genuine issue of material fact exists and judgment should be rendered as a matter of law. TEX. R. CIV. P. 166a(c); *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 279 (Tex. 2017). When a party moves for summary judgment on the affirmative defense of limitations, it must conclusively prove the defense. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). This requires the defendant to conclusively prove when the cause of action accrued. *Id.*[5] If the summary judgment movant establishes the statute of limitations bars the action, the nonmovant must adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *B.C.*, 512 S.W.3d at 279. We credit evidence favorable to the nonmovant if a reasonable factfinder could, and disregard contrary evidence and inferences unless a reasonable factfinder could not. *B.C.*, 512 S.W.3d at 279.

---

[5] If the discovery rule applies and has been pleaded or otherwise raised, the defendant must also prove as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *KPMG Peat Marwick*, 988 S.W.2d at 748. The discovery rule is not at issue in this case.

**Analysis**

Health care liability claims [6] are subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a); *see also Carreras*, 339 S.W.3d at 71. The limitations period commences from (1) the occurrence of the breach or tort; (2) the last date of the relevant course of treatment; or (3) the last date of the relevant hospitalization. TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a).

Appellees' summary judgment evidence established Broderick claimed to have been raped in May 2014. Accordingly, unless tolled, limitations ran before Broderick filed suit on June 23, 2016. In her first issue, Broderick argues she raised a genuine issue of material fact regarding whether limitations was tolled by either the HIPAA-compliant form she provided to appellees or because she was disabled.

As to Broderick's second argument, other than the claims of a minor under the age of twelve, the statute of limitations period for health care liability claims "applies to all persons regardless of minority or other legal disability." TEX. CIV. PRAC. & REM. CODE ANN. § 74.251(a); *see also Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 784 (Tex. 2007) (noting that provision in predecessor statute to chapter 74 that two-year statute of limitations "applies to all persons regardless of minority or other legal disability,"[7] expressly made tolling statute inapplicable to health care liability claims, "reflecting a considered legislative judgment in favor

---

[6] In oral argument, Broderick asserted her claims are not health care liability claims and are subject to the five-year limitations period applicable to claims based on a sexual assault. *See* TEX. CIV. PRAC. & REM. CODE ANN. §16.0045(b) (West Supp. 2017). Broderick, however, did not argue in the trial court or in her appellate brief that her claims were not health care liability claims, were not subject to chapter 74 of the civil practice and remedies code, or were governed by any statute of limitations other than the two-year limitations period set out in section 74.251 of the civil practice and remedies code. An issue may not be raised at oral argument unless it has been presented first in the party's written brief. *French v. Gill*, 206 S.W.3d 737, 743 (Tex. App.—Texarkana 2006; no pet.); *see also Smith v. Dass, Inc.*, 283 S.W.3d 537, 543 n.4 (Tex. App.—Dallas 2009, no pet.) (declining to consider argument raised for first time in post-submission letter brief); *Poland v. Willerson*, No. 01-07-00198-CV, 2008 WL 660334, at *5–6 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op.) (refusing to consider contention made for first time in oral argument that claims were health care liability claims that did not fall under the Texas Tort Claims Act's limited waiver of sovereign immunity). Accordingly, we will not consider Broderick's argument her claims are not health care liability claims.

[7] *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, §10.01, 1977 Tex. Gen. Laws 2039, 2052 (repealed 2003).

–7–

of the prompt resolution of such claims"). Accordingly, even if Broderick was disabled, that disability would not toll the running of limitations on her claims against appellees.

Relying on *Mock v. Presbyterian Hospital of Plano*, 379 S.W.3d 391 (Tex. App.—Dallas 2012, pet. denied), Broderick also argues the authorization form she provided was sufficient to toll the running of limitations for up to seventy-five days under section 74.051(c) of the civil practice and remedies code because "this is not a typical health care claim" and her failure to provide the required information did not frustrate the purposes of the statute. The purpose of the pre-suit notice, including the authorized release of health information, is to "encourage negotiations and settlement of disputes prior to suit, thereby reducing litigation costs." *Carreras*, 339 S.W.3d at 73. "The Legislature intended that 'by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit is filed, the statute [would] provide[] an opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage.'" *Id*. (alterations in original, quoting *In re Collins*, 286 S.W.3d 911, 916–17 (Tex. 2009) (orig. proceeding)); *see also Garcia v. Gomez*, 319 S.W.3d 638, 643 (Tex. 2010).

Section 74.052 of the civil practice and remedies code sets out the content of the required authorization form for release of protected health information as well as the precise text of the form with blanks to be filled in with information specific to the claimant's suit. TEX. CIV. PRAC. & REM. CODE ANN. § 74.052(c). By completing the form, the claimant authorizes the physician or health care provider to obtain protected health information to facilitate the investigation and evaluation of the claim or to defend litigation arising from the claim. *Id.* On the form, the claimant must provide the names and current addresses for the (1) physicians or health care providers who examined, evaluated, or treated the claimant in connection with the injuries alleged to have been sustained in connection with the health care liability claim; (2) physicians or health care providers who examined, evaluated, or treated the claimant during a period commencing five years prior to

the incident made the basis of the health care liability claim; and (3) physicians or health care providers possessing healthcare information concerning the claimant to whom the authorization does not apply because such healthcare information is not relevant to the damages being claimed or to the claimant's physical, mental, or emotional condition arising out of the health care liability claim. *Id.*

In *Mock*, the plaintiffs sent notice of their claim to the defendants and provided the authorization form required by section 74.052(c), but incorrectly completed one of the authorization form's blanks by writing the name of their attorney, rather than the defendants' names. 379 S.W.3d at 394. The plaintiffs correctly completed the blank in two similar fields that provided the same information as that included in the defective section of the form. *Id.* at 395 n.2. We concluded the authorization form was effective to trigger the tolling provision because it complied with the statutory requirements, and the error in completing the one blank appeared to have been an "inadvertent mistake." *Id.* at 395.

Broderick, however, did not simply make a mistake in completing the statutorily-required form. Rather, the authorization form provided by Broderick was a HIPAA-compliant form authorizing Hickory Trail to disclose protected health information to her attorney. It did not contain the language required by section 74.052(c), failed to authorize appellees to obtain health information from any physician or health care provider, and did not identify Broderick's physicians and health care providers. "Texas courts consistently have held that a claimant's complete failure to provide an authorization form as prescribed by Section 74.052 precludes the tolling of limitations pursuant to Section 74.051(c)." *Davenport v. Adu-Lartey*, 526 S.W.3d 544, 552 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also Carreras*, 339 S.W.3d at 74; *Walthour v. Advanced Dermatology*, No. 14-17-00332-CV, 2018 WL 1725904, at *3 (Tex. App.—Houston [14th Dist.] Apr. 10, 2018, no pet. h.) (mem. op.) ("A medical authorization form that

does not contain section 74.052's required information does not toll the statute of limitations when the missing information 'interferes with the statutory design to enhance the opportunity for pre-suit investigation, negotiation, and settlement.'"). Further, the Houston First Court of Appeals has specifically concluded a HIPAA-compliant form that lacks important components of the section 73.052(c) form—namely identification of the entity authorized to obtain protected health information and identification of treating physicians for five years before the incident giving rise to the claim—was insufficient to toll the statute of limitations. *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 837–38 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also Brannan v. Toland*, No. 01-13-00051-CV, 2013 WL 4004472, at *3 (Tex. App.—Houston [1st Dist.] Aug. 6, 2013, pet. denied) (mem. op.) (Because HIPAA-compliant form authorizing release of medical records to claimants' attorney did not comply with section 74.052(c), it "did not toll the statute of limitations under section 74.051.").

Broderick contends the deficiencies in the authorization form do not matter because appellees did not need the information to investigate her claims and did not request any of her medical records. However, Sheller acknowledged that Kim indicated he needed "more evidence of the rape," and the identities of the physicians and health care providers who treated Broderick after the alleged rape were directly relevant to appellees' ability to assess the validity of Broderick's claims. Accordingly, the HIPAA-compliant form provided by Broderick that authorized her attorney to obtain her medical records from Hickory Trail neither substantially complied with the requirements of section 74.052(c) nor furthered the purposes of the statute by providing appellees an opportunity to investigate and assess Broderick's claims. *See Borowski v. Ayers*, 524 S.W.3d 292, 303 (Tex. App.—Waco 2016, pet. denied) ("We are persuaded by *Nicholson*, *Mitchell*, *Brannan*, and *Myles* that failing to list any of the names and addresses of a patient's treating physicians or health care providers during the five years before the incident made

–10–

the basis of the notice of health care claim seriously hinders the statutory design to enhance pre-suit investigation, negotiation, and settlement."); *Johnson v. PHCC-Westwood Rehab. & Health Care Ctr., LLC*, 501 S.W.3d 245, 251–52 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (plaintiff's failure to timely identify certain providers "thwarted [the defendants'] ability to retrieve a material number of . . . relevant medical provider's records" and "interfered with the pre-suit evaluation encouraged by the statute"); *Mitchell*, 376 S.W.3d at 837–38 (HIPAA-compliant authorization form ineffective to toll running of limitations period).

We conclude Broderick failed to raise a genuine issue of material fact that limitations was tolled either by a disability or pursuant to sections 74.051 and 74.052 of the civil practice and remedies code. Accordingly, we resolve Broderick's first issue against her.

In her second issue, Broderick argues that, if the limitations period was not tolled, section 74.251 of the civil practice and remedies code (1) denies disabled individuals their Fourteenth Amendment right to equal protection, and (2) violates provisions of the ADA that "make such discrimination against the disabled illegal." Broderick asserts that a plaintiff who is disabled may fail to timely file suit against her health care provider because the disability makes her "unable to seek legal advice or assist with legal proceedings" within the limitations period. Relying on *Jacobsen v. N.Y. City Health & Hosps. Corp.*, No. 12 Civ. 7460(JPO), 2013 WL 4565037, at \*9 (S.D.N.Y. Aug. 28, 2013), a case brought under the ADA by an individual asserting claims of discrimination against his former employer, Broderick argues such a plaintiff is entitled to equitable tolling of the limitations period.

We question the applicability of *Jacobsen* to this case involving a health care liability claim. However, because the summary judgment evidence did not raise a genuine issue of material fact as to whether, in April 2016, Broderick was disabled as defined by the ADA, we need not determine the applicability of any equitable tolling available for claims brought under the ADA to

a health care liability claim or whether section 74.251 of the civil practice and remedies code violates the constitutional right of disabled individuals to equal protection.

The ADA defines "disability" as (1) a physical or mental impairment that substantially limits one or more major life activities of an individual, (2) a record of such an impairment, or (3) being regarded as having such an impairment. 42 U.S.C.A. § 12102(1). "Major life activities" are those of central importance to daily life. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 573 (4th Cir. 2015). As relevant to this case, the ADA provides a non-exhaustive list of "major life activities," which include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. at § 12102(2).

Broderick does not dispute that, at some point before the April 15, 2016 notice letter was sent, she was able to hire Sheller to assist her in pursuing her claims. She contends only that she was anxious and overwhelmed and could not "deal with" Sheller's many requests that she complete the proper authorization form. Broderick, however, cites to no authority that her inability to assist her attorney is, by itself, a "major life activity" under the ADA. *See, e.g. Trautman v. Time Warner Cable Tex., LLC*, No. A-16-CV-1049-LY, 2017 WL 5985573, at *5 (W.D. Tex. Dec. 1, 2017) ("An anxiety diagnosis that only limits driving in heavy traffic does not qualify under the ADA."). Furthermore, notwithstanding any alleged anxiety, Broderick was able to execute the HIPAA-compliant form she now argues tolled the running of the statute of limitations.

Broderick also argues at various points in her brief that she was on court-ordered medications when she was discharged from Hickory Trail and side effects of those medications "could hamper an individual's ability to assist with legal proceedings." The only summary judgment evidence relevant to this argument is Reading's statement that, in May 2014, Broderick was taking psychotropic medications and experienced the side effect of somnolence. Reading

noted this side effect would last until at least two weeks after Broderick stopped taking the medication. Broderick stated in her affidavit that it took several weeks for the effects of the medications to "wear off," indicating she stopped taking the medications at some point. Broderick provided no summary judgment evidence that she was taking any of the medications in April 2016. Reading also opined that individuals experiencing side effects from the psychotropic medications that were administered to Broderick could receive an "ICD-10" diagnosis that would qualify as a disability under the ADA. Reading, however, did not state Broderick received such a diagnosis in May 2014 or, if she did, that diagnosis was still effective in April 2016.

Broderick failed to identify any "major life activity" that was substantially impacted by her anxiety and provided no summary judgment evidence her mental state in April 2016 affected any aspect of her life other than this litigation. Accordingly, she failed to raise a genuine issue of material fact that, in April 2016, she was disabled under the ADA. *See Barnes v. GE Sec., Inc.*, 342 Fed. Appx. 259, 262 (9th Cir. 2009) (not designated for publication) (by failing to produce summary judgment evidence that anxiety prevented or severely restricted daily activities of central importance to her life, plaintiff failed to raise genuine issue of material fact that anxiety was "substantially limiting impairment" that would meet the requirements of the ADA). We resolve Broderick's second issue against her.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

161379F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LESLIE BRODERICK, Appellant

No. 05-16-01379-CV      V.

UNIVERSAL HEALTH SERVICES, INC.,
UHS OF DELAWARE, INC., HICKORY
TRAIL HOSPITAL, L.P., AND
RAJINDER SHIWACH, Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DC-16-07673.
Opinion delivered by Justice Fillmore,
Justices Lang and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Universal Health Services, Inc., UHS of Delaware, Inc.,
Hickory Trail Hospital, L.P., and Rajinder Shiwach recover their costs of this appeal from
appellant Leslie Broderick.


Judgment entered this 18th day of April, 2018.